IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DARRELL D. KILLENS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CV 319-087 |
| CPT. SID ANDREWS; LT. BARRANTINE; and SGT. DANIELS, | ) ) ) ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, a pre-trial detainee at Dodge County Jail ("DCJ") in Eastman, Georgia, brought this case pursuant to 42 U.S.C. § 1983. Before the Court is Defendants' unopposed motion for judgment on the pleadings, (doc. no. 36), which the Court **REPORTS** and **RECOMMENDS** be **GRANTED IN PART** and **DENIED IN PART**.

**I.   BACKGROUND**

Plaintiff alleges the following facts in his amended complaint. On March 12, 2019, Sheriff Chris Steverson transferred Plaintiff from Telfair County Jail ("TCJ") to DCJ, and claims the transfer was retaliation for him "filing grievances and a newspaper write-up on TCJ living conditions." (Doc. no. 27, p. 12.) In April 2019, Plaintiff requested law library access "or any form of [available] law references" from Captain Andrews at DCJ. (Id.) On April 4, 2019, Captain Andrews responded, "I don't have to provide a law library." (Id.) Plaintiff continued to make the same request, but Captain Andrews denied him every time. (Id. at 13.) Plaintiff alleges Captain Andrews' denial of a law library and deprivation of any and all legal resources

has impeded his prosecution of a civil case in state court, where Plaintiff has been ordered to forfeit property. (Id. at 13, 18-27.) Plaintiff also alleges the denial of access to legal materials hindered his ability to respond to "motions, defenses, and objections" in Killens v. Steverson, CV 319-027 (S.D. Ga. Apr. 8, 2019) (hereinafter "CV 319-027"). (Id. at 13.)

On May 6, 2019, Plaintiff waited in the recreation yard at DCJ to speak with Captain Andrews. (Id. at 15, 17.) Captain Andrews arrived with Lieutenant Barrantine, Sergeant Daniels, and four to six other deputies, each with their hands on their tasers. (Id.) Defendants Andrews, Barrantine, and Daniels pointed their tasers at Plaintiff and were ready to shoot. (Id.) They gave Plaintiff verbal commands to get on his knees. (Id.) Plaintiff stepped over a water puddle and attempted to kneel with his hands behind his head, but Captain Andrews fired his taser at Plaintiff. (Id. at 16-17.) Plaintiff's body locked up as he went to the ground, and roughly two minutes later, Sergeant Daniels shot Plaintiff with his taser. (Id.) Sergeant King then cuffed Plaintiff and took him to "D-Pod." (Id. at 17.)

After Sergeant Daniels tased him, Plaintiff was lightheaded and dizzy and believed his blood pressure was abnormal. (Id. at 16.) A doctor previously diagnosed Plaintiff with hypertension, which Plaintiff alleges can result in "blinking out," strokes, and seizures. (Id.) Plaintiff told Captain Andrews he was lightheaded and dizzy, and he requested medical care from Captain Andrews because of these symptoms. (Id.) Captain Andrews cursed, showed wanton behavior, and disregarded his duties as jail administrator. (Id.) Plaintiff passed out for an unknown time and suffered severe headaches, dizziness, and lightheadedness. (Id. at 17.)

Later that same day, Captain Andrews and Sheriff Sheffield transferred Plaintiff to Laurens County Jail ("LCJ"), which hindered Plaintiff's ability to obtain evidence, write

grievances, and discover the names of inmates and other officers who witnessed the tasing incident. (Id. at 14.) While being moved from the rec yard to "D-Pod", Plaintiff told Captain Andrews and Sergeant Daniels he would file grievances for using excessive force against him and not giving Plaintiff medical care. (Id.) Plaintiff also stated he would file a grievance against Captain Andrews for "his wanton behavior." (Id.) Once Plaintiff was placed in a cell at D-Pod, Captain Andrews told Plaintiff he would make Plaintiff disappear if he kept running his mouth. (Id. at 15.) Two hours later, Plaintiff was transferred to LCJ for six months, where he lost contact with witnesses and officers and visitation with family. (Id.) For relief, Plaintiff requests $100,000 in compensatory damages and $200,000 in punitive damages. (Id. at 5.)

## II. DISCUSSION

In their motion for judgment on the pleadings, Defendants contend (1) the excessive force claims arising out of the tasing should be dismissed because Plaintiff refused to comply with Defendants' orders; (2) the related failure to intervene claim should be dismissed for the same reason; (3) Plaintiff fails to state a First Amendment retaliatory transfer claim against Defendant Andrews because Plaintiff's threats to file grievances does not amount to constitutionally protected speech; (4) Captain Andrews and Sergeant Daniels are entitled to qualified immunity; and (5) Plaintiff is not entitled to compensatory or punitive damages under 42 U.S.C. § 1997e(e). (Doc. no. 36.) Plaintiff did not respond to Defendants' motion for judgment on the pleadings. As explained below, Plaintiff's claims for retaliation against Captain Andrews and failure to intervene against Lieutenant Barrantine should be dismissed for failure to state a claim upon which relief may be granted, while Plaintiff's claims for excessive force should procced.

3

### A.     The Legal Framework

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014) (internal quotation omitted).  "We accept as true all material facts alleged in the non-moving party's pleadings, and we view those facts in the light most favorable to the non-moving party."  Id.  As a motion for judgment on the pleadings under 12(c) and a motion to dismiss under 12(b)(6) are almost identical in form and relief, courts apply the same legal standard in assessing both motions.  See Mobile Telecommunications Techs., LLC v. United Parcel Serv., Inc., 173 F. Supp. 3d 1324, 1327 (N.D. Ga. 2016) ("The legal standard for assessing a motion for judgment on the pleadings is the same as the standard for a motion to dismiss under Rule 12(b)(6).") (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)).

Under the Rule 12(b)(6) standard, the court tests the legal sufficiency of the amended complaint, not whether the plaintiff will ultimately prevail on the merits.  Adinolfe v. United Tech. Corp., 768 F.3d 1161, 1168 (11th Cir. 2014).  To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual

4

allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. An amended complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a pro se litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the court has a duty to re-write the amended complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### B.     Plaintiff States a Valid Excessive Force Claim

"The Eighth Amendment's proscription of cruel and unusual punishments also governs prison officials' use of force against convicted inmates." Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999).[1] To state an excessive force claim, Plaintiff must satisfy both an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Objectively, Plaintiff must show that he suffered a "sufficiently serious" deprivation harmful enough to establish a constitutional violation. Id. *De minimi*s uses of physical force

---

[1]The Fourteenth Amendment Due Process Clause, rather than the prohibition on cruel and unusual punishment found in the Eighth Amendment, governs pre-trial detainee claims; however, the nomenclature need not delay the Court because the standards are the same. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).

5

are beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). Accordingly, not "every malevolent touch by a prison guard gives rise to a federal cause of action," even if it "may later seem unnecessary in the peace of a judge's chambers . . . ." Id. at 9 (citation omitted). However, because injury and force are imperfectly correlated and it is the force used that counts, an inmate "who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Subjectively, Plaintiff must show that the actions taken involved the unnecessary and wanton infliction of pain. See Whitley v. Albers, 475 U.S. 312, 319 (1986). That is,

> [F]orce does not violate the Eighth Amendment merely because it is unreasonable or unnecessary: "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."

Campbell, 169 F.3d at 1374 (quoting Whitley, 475 U.S. at 319). Rather, the Court must consider "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996) (quoting Hudson, 503 U.S. at 7).

Because the subjective component is contextual, courts consider the following factors: (1) extent of injury, (2) need for application of force, (3) relationship between need and amount of force used, (4) threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; Campbell, 169 F.3d at 1375. Any action taken should be viewed in light of the wide-ranging

deference accorded prison officials acting to preserve discipline and institutional security. Hudson, 503 U.S. at 6; Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (*per curiam*). For example, use of an appropriate degree of force to compel compliance with a valid order is justified. Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987); see also Ort v. White, 813 F.2d 318, 325 (11th Cir. 1987) (evaluating excessive force claim requires consideration of whether immediate coercive measures were taken "in a good faith effort to restore order or prevent a disturbance, and if the force used was reasonable in relation to the threat of harm or disorder apparent at the time.").

Liberally construing Plaintiff's *pro se* amended complaint, Plaintiff properly states an Eighth Amendment excessive force claim against Defendants Andrews and Daniels for tasing him in the recreational yard. See Erickson, 551 U.S. at 94 (requiring liberal construction of *pro se* pleadings); Haines, 404 U.S. at 520 (same). Indeed, Plaintiff alleges Defendant Andrews tased him while he had his hands behind his head and was beginning to kneel in compliance with officer orders, and he alleges Defendant Daniels tased him while he was lying on the ground and unable to move due to the first tasing.

Defendants argue Plaintiff's failure to comply with instructions permitted the use of force, citing in support Eleventh Circuit decisions granting summary judgment to officers where the evidence showed force was justified because the inmates refused to comply with officer orders and acted aggressively. See Tate v. Rockford, 497 F. App'x 921, 924 (11th Cir. 2012) (finding correction officer's push of inmate whose "threats, coupled with refusal to obey [officer's] commands to be quiet and move away from gate" reasonable); Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (finding deputy's shove of drunk and boisterous

inmate creating disturbance reasonable); Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990) (finding grabbing prisoner's throat reasonable measure of force in response to inmate creating disturbance by failing to follow instructions and shouting obscenities).  Here, in contrast, Plaintiff alleges he was complying with orders but Defendants Andrews and Daniels tased him anyway, which successfully pleads a claim for excessive force.

### C. Plaintiff Fails to State A Valid Claim for Failure to Intervene

"[A]n officer can be held liable under 42 U.S.C. § 1983 for failing to intervene when a fellow officer uses excessive force if he or she 'is present at the scene' and 'fails to take reasonable steps to protect the victim.'"  Militello v. Sheriff of Broward Sheriff's Office, 684 F. App'x 809, 813 (11th Cir. 2017) (quoting Skrtich v. Thornton, 280 F.3d 1295, 1302 (11th Cir. 2002)).  In order to be held liable, "an observing officer must have both the opportunity to intervene and be in a position to intervene and yet fail to do so." Johnson v. White, 725 F. App'x 868, 878 (11th Cir. 2018).

Defendant Barrantine argues Plaintiff has not shown he had the opportunity to intervene because the amended complaint does not allege he had sufficient time to intervene or was in a position to see Plaintiff being tased.  The Court agrees.  Plaintiff alleges Defendant Andrews tased him first, and two minutes later Defendant Daniels tased him.  The amended complaint does not allege facts from which one can reasonably infer Defendant Barrantine had any advance knowledge of either officer's intentions.  Without such advance knowledge, Defendant Barrantine had no opportunity to object or intervene.  In stark contrast to an ongoing physical assault, a tasing incident, such as the one described by Plaintiff, occurs almost instantaneously, without warning, and with no opportunity for intervention.

**D.    Plaintiff Fails to State a Valid Claim for Retaliatory Transfer**

Plaintiff maintains Defendants retaliated against him by transferring him to LCJ after Plaintiff threatened to file a grievance. "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." Smith v. Crews, 738 F. App'x 981 (11th Cir. 2018). Under the First Amendment, jail officials may not retaliate against pre-trial detainees for filing lawsuits or administrative grievances. See Jacoby v. Baldwin Cnty., 666 F. App'x 759, 762-63 (11th Cir. 2016) (discussing elements of pre-trial detainee retaliatory transfer claim under the First Amendment).

> To prevail on a retaliation claim, an inmate must show that (1) he engaged in speech or conduct protected by the Constitution; (2) the defendant took action of such a nature that it 'would likely deter a person of ordinary firmness' from exercising that right; and (3) a causal connection exists between the protected activity and the retaliatory action.

Id. at 762 (quoting Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005)); see also Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008).

Additionally, an amended complaint must contain enough facts to state a claim of retaliation that is plausible on its face. Douglas, 535 F.3d at 1321 (citing Twombly, 550 U.S. at 554). A pre-trial detainee may state a cognizable § 1983 claim by alleging the actions of jail officials "that might not otherwise be offensive to the Constitution" may be brought "within the scope of the Constitution by alleging that the actions were taken in retaliation for filing lawsuits and administrative grievances." Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986).

Plaintiff fails to set forth any facts indicating his threat to lodge a grievance against Defendants is constitutionally protected speech. See Watts v. United States, 394 U.S. 705,

9

707 (1969) (noting a difference between a threat and constitutionally protected speech); see also Monger v. Cook, No. 6:14-CV-129, 2015 WL 13735633, at *4 (S.D. Ga. Aug. 26, 2015), report and recommendation adopted, 6:14-CV-129, 2015 WL 5636878 (S.D. Ga. Sept. 25, 2015) (finding inmate threat to file grievance not protected speech); Owens v. Leavins, 2007 WL 1141505, at *5 (N.D. Fla. Apr. 17, 2007) (same).  As Plaintiff fails to show he engaged in constitutionally protected speech, his retaliatory transfer claim fails as a matter of law and should be dismissed.

### E.     Qualified Immunity

The doctrine of qualified immunity protects government officials, acting pursuant to their discretionary authority, "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Townsend v. Jefferson Cnty., 601 F.3d 1152, 1157 (11th Cir. 2010).  For an official's acts to be within his or her discretionary authority, they must be "(1) undertaken pursuant to the performance of [his or her] duties and (2) within the scope of [his or her] authority."  Jones v. City of Atlanta, 192 F. App'x 894, 897 (11th Cir. 2006) (punctuation omitted) (quoting Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995)).  If the defendant was acting within his or her discretionary authority, "the plaintiff must show that:  (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation."  Townsend, 601 F.3d at 1158 (punctuation omitted) (quoting Holloman ex. rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)).

"A right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent, and if a constitutional rule applies with obvious clarity to give an official fair warning that violating that right is actionable." Bennett, 423 F.3d at 1255 (11th Cir. 2005) (internal citations omitted). "If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003). Also, the Eleventh Circuit has held: "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decision of the United States Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997).

However, a qualified immunity defense is not available on excessive force claims. Skrtich v. Thornton, 280 F.3d 1295, 1302 (11th Cir. 2002). Use of excessive force is clearly established to be a violation of the Constitution. Hudson, 503 U.S. at 7; Whitley, 475 U.S. at 319. Because there is "simply no room for a qualified immunity defense when the plaintiff alleges such a violation," the sole question is "whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment." Skrtich, 280 F.3d at 1301-02. As discussed in Part II.B, Plaintiff has alleged sufficient facts, therefore no qualified immunity defense exists for Defendants in regard to the excessive force claims. The Court need not address Defendant Andrew's qualified immunity argument against Plaintiff's retaliatory transfer claim as that claim is subject to dismissal.

    **F.**    **Plaintiff Cannot Recover Compensatory or Punitive Damages**

Defendants argue Plaintiff's claims for compensatory and punitive damages are barred by 42 U.S.C. § 1997e(e), which provides as follows:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

Further, "[T]he PLRA requires a prisoner plaintiff to allege he suffered more than de minimis physical injury to recover compensatory or punitive damages." Stallworth v. Wilkins, 802 F. App'x 435, 441 (11th Cir. 2020).

Plaintiff alleges the tasing caused him to suffer mental trauma, hypertension, light headedness, dizziness, a severe headache, briefly passing out, and four unspecified open wounds. The only reasonable inference is that the open wounds are minor surface nicks caused by the taser barbs from the two tasing occurrences. These types of injuries are *de minimis* as contemplated by § 1997e. See Thompson v. Sec'y, Fla. Dep't of Corr., 551 F. App'x. 555, 556 (11th Cir. 2014) (finding "headaches, weakness, cold sweats, dizziness, weight loss, numbness in left arm, and high blood sugar" *de minimis* injuries); Boone v. Hannah, No. 1:06-CV-103, 2007 WL 2570779, at *3 (M.D. Ga. month/day? 2007) (finding wounds from taser barb dislodgement *de minimis*). Therefore, Plaintiff can only recover nominal damages on his excessive force claim. See Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007), abrogated on other grounds by Sossamon v. Texas, 563 U.S. 277 (2011) (finding plaintiff could still seek nominal damages for constitutional claims).

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for judgment on the pleadings be **GRANTED IN PART** and **DENIED**

**IN PART**, (doc. no. 36), Plaintiff's claims for retaliation against Captain Andrews and failure to intervene claim against Lieutenant Barrantine be **DISMISSED** for failure to state a claim upon which relief may be granted, and Plaintiff's excessive force claim against Captain Andrews and Sergeant Daniels be **ALLOWED TO PROCEED** except with respect to his claims for compensatory and punitive damages, which should be **DISMISSED**.

SO REPORTED and RECOMMENDED this 2nd day of December, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA